UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

Case No. 894-81580-reg

HIRSCH ELECTRIC CO., INC.,

Chapter 7

Debtor.

------------------------------------------------------------------x
ALLAN B. MENDELSOHN,
as Chapter 7 Trustee of the estate of
HIRSCH ELECTRIC CO., INC.,

Plaintiff,

Case No. 809-8452-reg

M. CARL LEVINE, MORGULAS & FOREMAN, P.C.,
JERROLD L. MORGULAS and
McLAUGHLIN & STERN, LLP,

Defendants.

------------------------------------------------------------------x

MEMORANDUM DECISION
(Re: Cross Motions for Summary Judgment)

Before the Court are cross-motions for summary judgment on this claim by the chapter 7

Trustee, Allan B. Mendelsohn ("Plaintiff") seeking damages for alleged legal malpractice by the

Defendants, M. Carl Levine, Morgulas & Forman, P.C., Jerrold L. Morgulas, and McLaughlin &

Stern, LLP ("Defendants").[1]  Although the Defendants have raised multiple defenses in this

action, at a hearing on the motions held on December 13, 2010, all parties agreed that the Court

may be able to resolve this matter by deciding a narrow issue of law which is ripe for summary

judgment.[2]  The parties have determined to limit the issue for this Court's decision to whether

privity existed between the Debtor, a subcontractor, and Long Island Jewish Medical Center

---

[1]    This lawsuit was dismissed voluntarily as against McLaughlin & Stern by notice of dismissal, dated November 16, 2009.  The defined term "Defendants", thus, includes M. Carl Levine, Morgulas & Forman, P.C., and Jerrold L. Morgulas.

[2]    Transcript of December 13, 2010 hearing, at 5-6.

("LIJ"), the owner of the construction project, sufficient to support the cause of action underlying the legal malpractice claim.  The Plaintiff has rested his claim of privity upon the theory that the Debtor's contract party, *i.e.*, the general contractor or construction manager on the project, Morse Diesel, Inc. ("Morse"), was the agent of LIJ and that this agency creates privity of contract between the Debtor and LIJ.  The parties have stipulated that if the Court finds no agency existed between Morse and LIJ, then the Debtor's claim against LIJ fails and as a result the Plaintiff does not have a valid claim against the Defendants for legal malpractice.  The parties have also stipulated that this is purely a question of law and that no genuine dispute as to any material fact exists.  *See* Fed. R. Civ. Proc. 56(a); Fed. R. Bankr. P. 7056.

In the underlying action, the Debtor (subcontractor) sued Morse (general contractor) and LIJ (owner), for contract damages.  All agree that the claims against Morse were worthless because Morse has ceased operations and any judgment would be uncollectible by the Debtor.  The Plaintiff argues, however, that the Debtor's claims against LIJ were valid and valuable.  The Defendants argue that the Debtor had no viable cause of action against LIJ because there was no actionable legal relationship between the Debtor and LIJ, *i.e.*, no privity.  The Plaintiff argues that the claims against LIJ were valid, but for the Defendants' malpractice, because Morse (with whom the Debtor clearly had a contractual relationship) was an agent of LIJ with the ability to create liability for LIJ under the subcontract.  Thus, the theory is that the Debtor had valid claims against LIJ as the principal for whom the agent, Morse, was acting.

For the reasons that follow, the Court finds that there was no general agency relationship between Morse and LIJ, and as such no privity between the Debtor and LIJ which would have permitted a direct claim by the Debtor against LIJ.  The Plaintiff has conceded that a finding by

the Court that no agency relationship exists would defeat the legal malpractice claims in this case.  Therefore, summary judgment shall be entered in favor of the Defendants.

### *Facts*

In 1981, the Debtor entered into several subcontracts with Morse to perform electrical work at the LIJ hospital.  A dispute arose in or around February 1990, and in March 1991 the Debtor commenced an action in state supreme court against Morse and LIJ seeking to recover damages for breach of contract and for balances due for work performed ("LIJ Matter").  LIJ and Morse each answered the complaint around September 1991.  The record reflects that the Debtor did not take any further action to prosecute the litigation prior to the Debtor's chapter 11 bankruptcy filing on March 23, 1994.  The Debtor's case was converted to chapter 7 on May 17, 1994 and the chapter 7 trustee ("Trustee"), the Plaintiff in this case, was appointed shortly thereafter.

On November 19, 1995, the Trustee retained the Defendant, M. Carl Levine, Morgulas & Foreman, P.C. ("MCLM&F") as special counsel to prosecute certain lawsuits for breach of contract and for balances due to the Debtor, including the LIJ Matter.  According to the Defendants, in 1999, MCLM&F advised the Plaintiff's general bankruptcy counsel, Jeffrey Herzberg, Esq., that there were serious problems with the Debtor's claim against LIJ, primarily that the Debtor held no claim against LIJ due to lack of privity.

Sometime in 2000, the Trustee was substituted in as Plaintiff in the LIJ Matter.  A status conference on the case was scheduled for February 1, 2001.  MCLM&F failed to appear and the matter was dismissed.  The Defendants claim they did not appear because they were unaware of

the status conference.  Consequently, they were unaware that the matter had been dismissed.

In March 2006, the MCLM&F closed its practice and Defendant, Jerrold L. Morgulas ("Morgulas") became a member of the law firm McLaughlin & Stern LLP ("McLaughlin Firm"). MCLM&F remained of record as special counsel to the Trustee until December 2008.  On December 19, 2008, the MCLM&F was discharged as special counsel to the Trustee and disgorged most of the legal fees it was paid as a consequence of their not acting diligently in the prosecution of the claims.

Sometime during the spring of 2009, the Plaintiff retained the McDonough Law Firm, L.L.P. ("McDonough Firm") to replace MCLM&F as special counsel.  It was at this time that the parties first discovered that the case had been dismissed in February 2001.  On May 11, 2009, the McDonough Firm moved on the Trustee's behalf to restore the LIJ Matter to the state court calendar.  The state court denied that motion on July 20, 2009.

In the instant malpractice action, the Plaintiff claims that the Defendants, MCLM&F and Morgulas individually were negligent in representing the Debtor by (i) failing to appear at the February 1, 2001 status conference; (ii) failing to become aware of the dismissal of the LIJ Matter for 8 years; (iii) failing to advise the Plaintiff that the LIJ Matter had been dismissed; (iv) failing to move to restore the LIJ Matter; and (v) failing to protect the interests of the Plaintiff in not acting diligently in the prosecution of the LIJ Matter.  The Plaintiff claims that the Defendants' legal malpractice proximately caused the Plaintiff to sustain damages in the amount of $2,982,221.00 plus interest from February 20, 1990.  The damages claimed by the Plaintiff are directly related to the damages asserted in the dismissed LIJ Matter.

*Discussion*

In order to establish a claim for legal malpractice, the Plaintiff must prove "that the attorney failed to exercise that degree of care, skill, and diligence commonly possessed and exercised by a member of the legal community . . ..  In addition, the plaintiff must establish that the attorney's negligence was a proximate cause of the loss sustained, that the plaintiff incurred actual damages as a direct result of the attorney's actions or inaction, and that but for the attorney's negligence, the plaintiff would have prevailed in the underlying action or would not have sustained any damages . . . ." *Cannistra v O'Connor, McGuinness, Conte, Doyle, Oleson & Collins*, 728 N.Y.S.2d 770 (N.Y. App. Div. 2001) (citations omitted).

Despite the existence of a variety of defenses asserted by the Defendants, the parties concede that this case can be resolved on the issue of whether the Debtor's claim against LIJ was validly asserted and would have been successful but for the Defendants' alleged malpractice. The parties agree that the Debtor's claims against LIJ could only be valid if this Court finds that Morse was acting as an agent for LIJ thus creating privity between the Debtor and LIJ.

The Plaintiff argues that an agency relationship existed between Morse and LIJ, and that this agency establishes the privity necessary to support the Debtor's assertion of a direct cause of action against LIJ.  In support of his theory, the Plaintiff first argues that in the verified answer filed by Morse in connection with the LIJ Matter, Morse admitted that it was a construction manager on the project "and at all times acted as agent for LIJ, its disclosed principal." (Defendants' Motion for Summary Judgment [Doc.# 19], Exh. C, Morse's Verified Answer ¶52). The Plaintiff also cites to certain contract documents which refer to Morse as "construction manager" and argues that it is custom and practice in the industry that a construction manager

acts as agent for the owner.  In addition, the Plaintiff points to Article 17 of the Morse/LIJ

contract which was incorporated into the subcontract and which specifically provides that Morse

is LIJ's agent for the purposes of making rentals or purchases, "to make the Owner liable in the

first instance to such lessors or vendors with respect to such rentals or purchases."  (Defendants'

Motion for Summary Judgment [Doc.# 19], Exh. J, Article 17).

       In response, the Defendants point out that the Morse/LIJ contract consistently refers to

Morse as a "contractor," which is a defined term, and not a "construction manager," which is not

defined in the contract.  In addition, the Defendants point out that Morse is only referred to as

"construction manager" in certain documents which are appended to the subcontract, not the

main contract.  In any event, they argue that even if Morse was properly to be given the title of

"construction manager" on the project, construction managers are not necessarily agents of the

owner for all purposes.  If it is the intention of the parties to create an agency relationship for all

purposes, it must be explicitly stated in the contract between the parties.  *See Drywall Tapers*

*and Pointers of Greater New York v. Local 530 of the Operative Plasterers and Cement Mason*

*Int'l Assoc.*, Nos. 93-CV-0154 (JG), 98-CV-7076 (JG), 2002 WL 31641597, at *11 (E.D.N.Y.

Nov. 19, 2002); *Spectrum Painting Contractors, Inc. v. Kreisler Borg Florman General Constr.*

*Co.*, 883 N.Y.S.2d 262 (N.Y. App. Div. 2009); *Tonking v. Port Authority*, 768 N.Y.S.2d 311

(N.Y. App. Div. 2003), *aff'd*, 821 N.E.2d 133 (N.Y. 2004).

       The Defendants admit that an agency relationship can also be established by the conduct

of the parties, *i.e*, where the owner – LIJ – actually exerts substantial or complete control over

the work in the field.  They argue that typically, a true agent/construction manager does little or

none of its own work on a project but rather acts more as an expediter/superviser of other

contractors on the job.  In this case, they argue, Morse was not a true agent/construction manager because Morse performed its own work on the LIJ project together with subcontractors and there is no indication that LIJ took part in any of the day to day work performed on the job.

The Defendants also argue that the Morse/LIJ contract was a "guaranteed maximum price" ("GMP") contract which is inconsistent with the Plaintiff's agency theory.  According to the Defendants, under a GMP contract the construction manager guarantees the owner a maximum price for the job, assumes control over all work, and cost over runs are deducted from the construction manager's fee.  They argue that there is typically no agency relationship between the construction manager and the owner in the GMP scenario because the construction manager/contractor has a financial interest in the work performed and its interests are not necessarily aligned with the owner's.

The Defendants also cite to Article 14 of the Morse/LIJ contract regarding liquidated damages which provides that if Morse delayed work on the project, it would have to pay $1,300 per day in liquidated damages to LIJ.  This fact, they argue, also dictates against the Plaintiff's agency theory.

Finally, the Defendants argue that Article 17 which refers to an agency relationship between LIJ and Morse for purposes of rentals and purchases, only relates to purchases from vendors of rental equipment and the intention of this customary provision is to allow the general contractor to use the hospital's tax exemption to reduce costs.  The agency created by this provision is, therefore, very limited.  They also reason that if Morse were in fact the agent of LIJ for all purposes, then the inclusion of this provision in Article 17 would be superfluous.

The Court agrees with the Defendants and finds that there was no agency relationship

between Morse and LIJ, and therefore no privity existed between the Debtor and LIJ.

## *Analysis*

Under New York law, subcontractors generally are prohibited from pursuing extra work claims against project owners where there is no direct contractual relationship between the subcontractor and the owner. *See Tibbetts Contracting Corp. v. O&E Contracting Co., Inc., et al.*, 206 N.E.2d 340 (N.Y. 1965) (requiring privity of written contract). Exceptions to this general rule exist, *see, e.g.*, *U.S. East Telecommunications, Inc. v. US West Communications Services*, 38 F.3d 1289, 1297-99 (2d Cir. 1994) (finding a direct cause of action appropriate where "the owner has agreed to pay the [debt] or if the circumstances surrounding the parties' dealings can be found to have given rise to an obligation to pay"); *Schuler-Haas Elec. Corp. v. Wager Constr. Corp.*, 395 N.Y.S.2d 272 (N.Y. App. Div. 1977), but will not be addressed in this Decision because the parties have agreed to limit the issue for this Court's consideration to whether there is privity between the Debtor and LIJ, specifically by reason of a purported agency relationship between Morse and LIJ.

The Plaintiff urges this Court to find that where there is a principal/agent relationship between a project owner and a general contractor, privity exists between the subcontractor and the owner despite the absence of any direct contact between those parties. This theory derives from the general rule under New York law, that "an agent for a disclosed principal is not liable to third parties for any sums owed by the principal." *Owen Steel Co., Inc. v. George A. Fuller Co., et al.,* 563 F.Supp. 298, 300 (S.D.N.Y. 1983) (finding agency existed between general contractor and owner and dismissing subcontractor claims against general contractor). This

means that a general contractor is not liable to a subcontractor for contract damages where it is proven that the general contractor was acting as the agent of the owner. *Id.* The logical extension of this rule, relevant in the context of the instant matter, is that in situations where a general contractor is found to be the agent for the owner, a subcontractor's contract claim is properly brought against the owner even if no direct contractual relationship exists between the subcontractor and the owner. *Cf. Superb Gen. Contr. Co. v. City of New York*, 893 N.Y.S.2d 866 (N.Y. Sup. Ct. 2010) (dismissing direct subcontractor claim against project owner where construction manager was not an agent or representative of the owner).

Under New York law, an agency relationship can be either express or implied and can be established by the conduct of the parties, or by written or oral agreement. Agency can be found if it is expressly included in a contract between an owner and general contractor, or if the conduct of the parties implies an agency relationship.

> Agency requires three components: (1) manifestation by the owner of the site that the purported agent should act on its behalf; (2) assent by the purported agent to serve as the owner's agent; and (3) 'an understanding between the parties that the principal is to be in control of the undertaking.' *SEC v. American Bd. of Trade, Inc.*, 654 F.Supp. 361, 366 (S.D.N.Y.1987). Agency authority may be granted by express agreement or by implication. *See Minskoff v. American Express Travel Related Services Co. Inc.* 98 F.3d 703,708 (2d Cir. 1996). In addition, an agent may have apparent authority where 'words or conduct of the principal, communicated to a third party, ... give rise to the appearance and belief that the agent possesses authority to enter into a transaction.' *Herbert Const. Co. v. Continental Ins. Co.*, 931 F.2d 989, 993 (2d Cir.1991) (internal quotation marks omitted).

*Drywall Tapers and Pointers of Greater New York v. Local 530 of the Operative Plasterers and Cement Mason Int'l Assoc.*, Nos. 93-CV-0154 (JG), 98-CV-7076 (JG), 2002 WL 31641597, at *11, n.9 (E.D.N.Y. Nov. 19, 2002)

The Court finds that the Plaintiff has failed to demonstrate the existence of an express or

implied, written or oral, agency agreement between Morse and LIJ sufficient to establish privity

between the Debtor and LIJ.  The contract documents do not contain any express agency

agreement and the Plaintiff has failed to allege any words or conduct by LIJ which would

establish that LIJ intended Morse to act as its agent to contract with Morse, or that the Debtor

reasonably believed that Morse had authority to act as agent for LIJ.

The Court ascribes little value to Morse's self-serving statements in its answer to the

original complaint, and at a deposition, that it was the agent of LIJ for all purposes.  Morse was

asserting the agency theory as an affirmative defense to liability.  If it was found that Morse was

acting on behalf of LIJ – a disclosed principal – all liability would shift to LIJ.  The purported

agency relationship was never proven in the action.  Moreover, the existence of an agency was

not admitted, and in fact was disputed, by LIJ in its answer to the original complaint.

The contract documents do not show that an express agency agreement was entered into

in this case.  According to Cushman, Cushman & Cook's *Construction Litigation* treatise, cited

to by the Defendants, "if the owner desires an agency relationship, the contract should

specifically so provide."  *Construction Litigation*, §4.3 at 131.  The Morse/ LIJ contract does not

specifically provide for a general agency relationship.  Rather, the agreement includes a

provision that allows Morse to act as agent for LIJ to make "rentals and purchases."  This

implies that Morse was only authorized to act as agent of LIJ in a limited capacity and a general

agency relationship was not created.

The Court also agrees with the Defendants that where the general contractor is also

performing its own work on the job, it is unlikely that an agency relationship exists with the

owner.  "When the CM is also acting as a general contractor (by letting contracts, performing

some of the work, or guaranteeing a maximum price), the identity of interests necessary to support the 'relationship of trust and confidence' of an agency usually does not exist because the CM/contractor has a financial interest in all or part of the work." *Id.* at 132.  The Morse/LIJ contract specifically provides that Morse was responsible for all work on the project.  It provides that Morse "shall provide all labor, materials, equipment, services and facilities necessary for the entire completion of the work shown and/or described." (Defendants' Motion for Summary Judgment [Doc.# 19], Ex. I, Section No. 1A.002.30, p. 1A-2).  The contract also specifically provides that Morse, not LIJ, is responsible for liability arising from work performed on the contract.  For example, Section No. 1A.0017.30, p. 1A-10 of the General Conditions to the Morse/LIJ contract, provides that Morse "shall promptly made good, at [its] own expense, any injury or damages to the work of other contractors caused directly or indirectly by [Morse], his subcontractors or their respective employees or agents.  If any such other contractor sues [LIJ] on account of any damage alleged to have been so sustained, [LIJ] shall notify [Morse] and [Morse] shall . . . defend any such proceeding at [Morse's] own expense and shall forever save and keep harmless and fully indemnify [LIJ], . . . from any and all liabilities, damages, claims recoveries and expenses by reason thereof." (Defendants' Motion for Summary Judgment [Doc.# 19], Ex. I, Section No. 1A.0017.30, p. 1A-10).

Directly on point in this case, the General Conditions of the Morse/LIJ contract specifically state that "[n]othing contained in any of the Contract Documents shall create any contractual relationship between the Owner and any subcontractor." (Defendants' Motion for Summary Judgment [Doc.# 19], Ex. I, §1A.0035, p.  1A-20).  In addition, Section 9.5.4 of the General Conditions of the Contract for Construction, which were incorporated into the

Morse/Hirsch subcontract specifically stated that "[n]either the Owner nor the Architect shall have any obligation to pay or to see to the payment of any moneys to any Subcontractor except as may otherwise be required by law." (Defendants' Motion for Summary Judgment [Doc.# 19], Ex. J, §9.5.4, p. GC-14); *see Schuler-Haas Elec. Corp. v. Wager Constr. Corp.*, 395 N.Y.S.2d 272 (N.Y. App. Div. 1977) (dismissing direct claim by subcontractor against project owner and finding that "[t]he terms of the general contract, which were incorporated into the subcontract by reference, expressly negated any contractual liability between the owner and subcontractor."). These contract provisions belie a finding that Morse was an agent acting on behalf of LIJ, its purported principal, or that there was any direct obligation for LIJ to pay the Debtor for subcontracted services.

Finally, the Court agrees with the Defendants that the use of the title "construction manager" does not necessarily create an agency relationship between the owner and construction manager in all cases. *See Drywall Tapers*, 2002 WL 31641597, at *11 ("[C]onstruction managers sometimes act as agent of the owner and sometimes act only as a contractor working for the owner.") (citation omitted). "[I]n determining whether the construction manager is an agent of the owner, the contractual provisions addressing agency and the owner's right to control the construction manager are of paramount importance. ... [I]t is the owner's *right* to control the construction manager, not whether the owner in fact exercises control, that is critical in determining agency." *Construction Litigation,* p. 426 (Kenneth M. Cushman et al. eds., PLI 2d Ed. 1993). Even if this Court were to ascribe independent significance to the "construction manager" title, the exhibits presented to the Court clearly show that the general and supplementary conditions to the Morse/LIJ contract consistently refer to Morse as "contractor"

not "construction manager."  The term "construction manager" is used in a more limited way and appears to have been used only in connection with conditions supplemental to the Morse/Hirsch subcontract.  More importantly, however, the terms and conditions of the Morse/LIJ contracts do not support a finding that Morse was a construction manager on the LIJ project acting as an agent for LIJ.

### *Conclusion*

For all of the foregoing reasons, the Court grants summary judgment in favor of the Defendants.  Judgment will issue in favor of the Defendants.

Dated: Central Islip, New York
      October 20,  2011                        ***/s/ Robert E. Grossman***
                                             Hon. Robert E. Grossman
                                             United States Bankruptcy Judge